FILED

2021 Jun-15  AM 11:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| SAMDREKUS BESTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:19-cv-01610-ACA-SGC |
| | ) | |
| DUSTIN WARD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

The plaintiff, Samdrekus Bester, has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 for violations of his civil rights.  (Doc. 1).  Bester names as defendants in the complaint: Correctional Officers Dustin Ward and Trinity McGill.  (Doc. 1 at 1, 3).  Bester alleges Ward and McGill used excessive force against him and denied him medical treatment in violation of the Eighth Amendment.  (Doc. 1 at 4-7).  He requests a jury trial and seeks monetary relief against the defendants in their individual capacities.  (Doc. 1 at 3).

In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the court referred the complaint to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I. PROCEDURAL HISTORY

On February 4, 2020, the court entered an Order for Special Report, directing the Clerk to forward copies of the complaint to each of the named defendants and directing the defendants to file a Special Report addressing Bester's factual allegations within 60 days. (Doc. 9). The court advised the defendants the Special Report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the *Federal Rules of Civil Procedure*. (Doc. 9 at 5, 8).

On July 9, 2020, the defendants filed a Special Report, supplemented by affidavits and institutional documents. (Doc. 15). On September 4, 2020, the court notified the parties the court would construe the Special Report as a motion for summary judgment and notified Bester he had 21 days to respond to the motion for summary judgment by filing affidavits or other material. (Doc. 16). The court also advised Bester of the consequences of any default or failure to comply with Rule 56. (Doc. 16); *see also Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). Bester did not file a response within the prescribed time.

On November 12, 2020, Bester moved for an extension of time to respond to the defendants' motion for summary judgment. (Doc. 20). On November 24, 2020, the court granted Bester's motion and allowed him 30 days to file a response. (Doc. 21). However, Bester failed to file a response. This matter is now before the court

on the defendants' motion for summary judgment.  For the following reasons, the undersigned recommends defendants' motion for summary judgment be granted in part and denied in part.

## II. STANDARD OF REVIEW

Because the court has construed the defendants' Special Report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to
> establish a prima facie case. "In such a situation, there can be 'no
> genuine issue as to any material fact,' since a complete failure of proof
> concerning an essential element of the non-moving party's case
> necessarily renders all other facts immaterial." [citations omitted].
> Thus, under such circumstances, the public official is entitled to
> judgment as a matter of law, because the plaintiff has failed to carry the
> burden of proof. This rule facilitates the dismissal of factually
> unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally construed. *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

## III. SUMMARY JUDGMENT FACTS[1]

On the evening of January 23, 2019, Correctional Officer Dustin Ward informed Bester it was his turn to go to the shower. (Doc. 1 at 4). After Ward

---

[1] Based on the foregoing summary judgment standard, the following facts are undisputed or, if disputed, taken in a light most favorable to the non-moving party. Factual disputes are addressed in footnote form.

4

handcuffed Bester in the front, Bester turned around to get his belongings and noticed the left cuff was loose.  (Doc. 1 at 4).  Once out of his cell, Bester showed Officer Ward the cuff and informed him it was not on properly.  (Doc. 1 at 4). Without saying anything, Ward pushed Bester's head into the door and started punching him about the head and face.  (Doc. 1 at 4-5).  Correctional Officer Trinity McGill ran to the scene.  (Doc. 1 at 5).  Both defendants beat Bester. (Doc. 1 at 5). Bester dropped to the ground, "letting [Officers Ward and McGill] know that [he] didn't want any trouble," and attempted to protect his face and body.  (Doc. 1 at 5).[2] Ward and McGill denied Bester a shower and told him to go back to his cell before they beat him again.  (Doc. 1 at 5).[3]  McGill later told Bester he would support Ward

---

[2] Bester has submitted statements of inmates who allege they witnessed Officers Ward and McGill use excessive force against Bester.  (Doc. 1 at 10-11; Doc. 11 at 12-13).  However, the statements are not sworn and made under penalty of perjury, as required by 28 U.S.C. § 1746.  As a general rule, district courts may not consider unsworn statements when determining the propriety of summary judgment. *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent all Fifth Circuit decisions prior to October 1, 1981).

[3] Ward states that on January 23, 2019, at approximately 9:15 p.m., he and Officer McGill handcuffed Bester to the rear and escorted him towards the showers on the bottom tier.  (Doc. 15-3 at 1).  Ward asserts Bester attempted to pull his left hand free from the handcuffs.  (Doc. 15-3 at 1).  Ward contends he and McGill placed Bester against the wall and secured his handcuffs by double-locking them.  (Doc. 15-3 at 1).  Ward asserts he and McGill escorted Bester back to his assigned cell and Ward secured the cell door and removed Bester's handcuffs through the tray flap. (Doc. 15-3 at 1).  Officer Ward contends no force was used during the incident.  (Doc. 15-3 at 1).

regardless of what he did because they were in the same training academy.  (Doc. 1 at 5).[4]

It is prison policy that medical staff examine an inmate immediately after a use of force and complete a body chart.  (Doc. 1 at 6).  Ward informed Bester he would send a nurse to examine him and complete a body chart, but a nurse never came.  (Doc. 1 at 5).  Bester asked other correctional officers for medical attention, but they refused.  (Doc. 1 at 6).  Bester contends he experienced swelling and soreness and what he believed to be broken ribs and a broken wrist.  (Doc. 1 at 6).

Bester wrote a letter to a captain and warden concerning the use of excessive force by Officers Ward and McGill.  (Doc. 1 at 5).  Prison officials later charged Bester with a rule infraction, and medical staff examined Bester and completed an inmate body chart on January 25, 2019.  (Doc. 1 at 5; Doc. 15-4 at 1).  The body chart noted Bester was alert and oriented, his skin was intact, he maintained a steady gait, and he was in stable condition.  (Doc. 15-4 at 1).  The body chart noted no injury to Bester.  (Doc. 15-4 at 1).

---

[4] McGill states that on January 23, 2019, he assisted Officer Ward in placing handcuffs on Bester to escort Bester to the showers.  (Doc. 15-2 at 1).  He states Bester attempted to pull his left hand free from the handcuffs and, in response, he and Ward placed Bester against the wall to secure the handcuffs.  (Doc. 15-2 at 1).  McGill alleges he and Ward escorted Bester back to his cell, and he had no further interaction with Bester.  (Doc. 15-2 at 1).  McGill denies striking or beating Bester or witnessing any officer using excessive force against Bester.  (Doc. 15-2 at 2).

On March 6, 2019, Officer David Tolbert conducted a disciplinary hearing and found Bester guilty of violating Rule 505–Intentionally Creating a Security, Safety, or Health Hazard and recommended sanctions against Bester. (Doc. 15-1 at 8-9).[5]  Warden Langford approved the finding of guilt. (Doc. 15-1 at 10).

## IV. ANALYSIS

### A. Excessive Force

Bester alleges that on January 23, 2019, Officers Ward and McGill beat him after he notified Ward his handcuff was not secure. (Doc. 1 at 4-5). Liberally construing the complaint, Bester contends he did not pose a threat to Ward and McGill and their use of force was excessive. (Doc. 1 at 4-5, 7). For the following reasons, the defendants' motion for summary judgment is due to be denied as to Bester's Eighth Amendment excessive force claim.

Bester's excessive force allegations against the defendants must be analyzed under the standard set forth by the United States Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986). *See Campbell v. Sikes*, 169 F.3d 1353, 1374-75 (11th Cir. 1999). In *Hudson*, the Supreme Court held that in assessing an inmate's excessive force claim, "the core

---

[5] Although the disciplinary report indicates Bester entered a plea of guilty to the charge (Doc. 15-1 at 8), he refused to sign the report, instead writing, "All Lies." (Doc. 15-1 at 10). Additionally, Bester submitted a statement to the hearing officer repeating his claims that after he notified Ward and McGill that his handcuff was loose the officers used excessive force against him. (Doc. 15-1 at 9). Bester also stated in a letter to Warden Patrick that he did not plead guilty to violating Rule 505 and was certain he did not sign any document admitting guilt. (Doc. 11 at 7).

judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith

effort to maintain or restore discipline, or maliciously and sadistically to cause

harm." *Hudson*, 503 U.S. at 6-7.   In extending *Whitley* to all cases involving

allegations of the use of force by prison officials, the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever
> guards use force to keep order.  Whether the prison disturbance is a riot
> or a lesser disruption, corrections officers must balance the need to
> maintain or restore discipline through force against the risk of injury to
> inmates.  Both situations may require prison officials to act quickly and
> decisively.   Likewise, both implicate the principle that prison
> administrators should be accorded wide-ranging deference in the
> adoption and execution of policies and practices that in their judgment
> are needed to preserve internal order and discipline and to maintain
> institutional security.

*Id.* at 6 (internal quotation marks omitted and alterations adopted).

With these concerns in mind, the Supreme Court set out certain factors that

should be considered when evaluating whether the force used was excessive.  These

factors include: (1) the need for application of force; (2) the relationship between

that need and the amount of force used; (3) the threat reasonably perceived by the

responsible official; (4) any efforts to temper the severity of a forceful response; and

(5) the extent of the injury suffered by the inmate.  *Whitley*, 475 U.S. at 321.

In applying the foregoing factors to the facts of a particular case, the Supreme

Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives
> rise to a federal cause of action.  The Eighth Amendment's prohibition
> of   cruel   and   unusual   punishments   necessarily   excludes   from

> constitutional recognition *de minimis* uses of physical force, provided
> that the use of force is not of a sort repugnant to the conscience of
> mankind.

*Hudson*, 503 U.S. at 9 (internal quotation marks and citation omitted).  Thus, to

create a genuine issue of material fact, a plaintiff must come forward with evidence

from which a reasonable inference can be drawn that the defendant acted maliciously

and sadistically.

Bester alleges that when he notified defendant Ward that his handcuff had

come loose, Ward, without saying anything, pushed his head into a door and punched

him about the face and head.  (Doc. 11 at 4-5).  Bester further alleges that after

defendant McGill arrived on the scene, both officers beat him.  (Doc. 1 at 5).  Bester

contends he dropped to the ground, "letting [Ward and McGill] know that [he] didn't

want any trouble," and attempted to protect his face and body from the blows.  (Doc.

1 at 5).  He states the defendants instructed him to go back to his cell before they

beat him again.  (Doc. 1 at 5).

Construing the facts in a light most favorable to Bester, Ward and McGill

intentionally and maliciously attacked him.  Moreover, no force was needed to

restore or maintain discipline at the time, given Bester voluntarily informed Ward

his handcuff was not secured properly and was neither exhibiting threatening

behavior toward the officers nor disobeying any direct order.  On the other hand,

defendants Ward and McGill state they placed handcuffs on Bester to the rear and

were escorting him towards the showers when he attempted to pull his left hand free from the handcuffs.  (Doc. 15-3 at 1; Doc. 15-2 at 1).  Ward and McGill contend they placed Bester against the wall and secured his handcuffs by double-locking them.  (Doc. 15-3 at 1; Doc. 15-2 at 1).  Ward and McGill state they escorted Bester back to his assigned cell and Ward secured the cell door and removed Bester's handcuffs through the tray flap.  (Doc. 15-3 at 1; Doc. 15-2 at 1).  Both Ward and McGill deny striking or beating Bester.  (Doc. 15-3 at 1; Doc. 15-2 at 2).

It is well established that assessing the credibility of the allegations made by a plaintiff or a defendant is beyond the scope of a trial court's ruling on a motion for summary judgment.  *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742–43 (11th Cir. 1996).  The facts presented by the parties show a genuine dispute exists regarding the incident that took place on January 23, 2019, and whether the defendants used excessive force against Bester.

Defendants Ward and McGill contend "the fact that [Bester] cannot demonstrate an injury that is even [*de minimus*] is fatal to his claim and mandates dismissal."  (Doc. 15 at 9).  However, the extent of injury is but one factor in determining whether an inmate was subjected to excessive force.  In *Wilkins v. Gaddy*, the Supreme Court clarified the purpose of *Hudson* was to "shift the 'core judicial inquiry' from the extent of the injury to the nature of the force – specifically,

whether [the force] was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'"  559 U.S. 34, 39 (2010) (quoting *Hudson*, 503 U.S. at 7).  Indeed, in the context of an Eighth Amendment excessive force claim, the Supreme Court has recognized "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 38.  If Ward and McGill repeatedly struck and punched Bester about his head and body when Bester was not posing a threat or resisting their orders, their conduct would exceed a *de minimis* use of force and would rise to the level of force used maliciously and sadistically to cause harm. *See Hudson*, 503 U.S. at 6-7.

Moreover, a plaintiff claiming a violation of his constitutional rights may recover nominal damages even if he suffered no compensable injury.  *See Brooks v. Warden*, 800 F.3d 1295, 1308 (11th Cir. 2015); *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003) ("Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages.").  Additionally, the Eleventh Circuit recently held 42 U.S.C. § 1997e(e) does not bar a prisoner from recovering punitive damages for mental or emotional injury in the absence of physical injury. *See Hoever v. Marks*, 993 F.3d 1353, 1362 (11th Cir. 2021) ("[A] plaintiff – at least one alleging a constitutional violation – need not allege a compensable injury to seek

punitive damages, so long as he plausibly alleges that the underlying misconduct was willful or malicious.").[6]  Thus, Bester's excessive force claims are not subject to dismissal simply because there is no medical evidence he sustained a serious physical injury.

The defendants also argue they are entitled to qualified immunity regarding Bester's excessive force claims.  (Doc. 15 at 17–18).  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotation marks and citations omitted).  To obtain qualified immunity, the government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted).  "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  *Id*.  The plaintiff must show "(1) the defendant violated a constitutional right, and

---

[6] Title 42 U.S.C. § 1997e(e) states:

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

(2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).

There is no dispute the defendants were acting within the scope of their discretionary authority when they allegedly used excessive force against Bester on January 23, 2019.   Because there is a question of fact concerning whether the defendants used excessive force against Bester, the defendants are not entitled to qualified immunity.  Specifically,

> a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force maliciously and sadistically to cause harm is clearly established to be a violation of the Constitution . . . . There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation.  The only question, then, is whether the plaintiff has alleged facts sufficient to survive a . . . motion for summary judgment.  If he has done so, that is the end of the inquiry.

*Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (internal quotation marks and citation omitted).

Bester has alleged facts sufficient to survive a motion for summary judgment concerning his Eighth Amendment excessive force claims against Ward and McGill, and they are not entitled to qualified immunity on this claim at this stage of the proceedings.

**B. Denial of Medical Care**

Bester alleges that after the defendants used excessive force against him, they denied him medical care in violation of the Eighth Amendment. (Doc. 1 at 57). For the following reasons, the defendants' motion for summary judgment is due to be granted as to Bester's Eighth Amendment medical claim.

The Supreme Court has held only deliberate indifference to serious medical needs is actionable under § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A plaintiff must present evidence showing he had a serious medical need, the defendant acted with deliberate indifference in responding or failing to respond to that need, and the defendant's wrongful actions caused an injury. *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *See Bass v. Sullivan*, 550 F.2d 229, 230 (5th Cir. 1977).

An official also acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening or urgent medical condition that would be exacerbated by delay. *See Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187-88 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002); *Harris v. Coweta Cnty.*, 21 F.3d 388, 394 (11th Cir. 1994). Delay in access to medical

14

treatment can violate the Eighth Amendment when it is "tantamount to unnecessary and wanton infliction of pain." *Brown v. Hughes*, 894 F.2d 1533, 1537-38 (11th Cir. 1990) (internal quotation marks omitted).  An inmate claiming an unconstitutional delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."  *Hill*, 40 F.3d at 1188.

Bester alleges Ward informed him that he would send a nurse to examine him after the incident on January 23, 2019, but no member of the prison medical staff examined him that day.  (Doc. 1 at 5-7).  Bester asserts he asked other officers for medical aid, but they refused.  (Doc. 1 at 6).  It was not until Bester wrote a letter to a captain that he was seen two days later.  (Doc. 1 at 5-6; Doc. 15-4 at 1).  Medical staff documented no injury to Bester.  (Doc. 15-4 at 1).  Bester contends it is prison policy for medical staff to examine an inmate and complete a body chart immediately after a use of force.  (Doc. 1 at 6).

Assuming without deciding Bester's pain rose to the level of a serious medical need, the record is devoid of evidence defendants Ward and McGill were deliberately indifferent to that need.  Bester claims it is prison policy that medical staff examine an inmate and complete a body chart immediately after a use of force.  However, violation of prison regulations does not state a constitutional violation. *See Sandin v. Conner*, 515 U.S. 472, 481-82 (1995) (prison regulations are not

intended to confer rights or benefits on inmates but are merely designed to guide correctional officers in the administration of prisons).  Moreover, Bester provides no evidence Ward intentionally failed to inform medical staff of the need to examine him.  Indeed, based on the facts as alleged in the complaint, Ward may very well have informed medical staff Bester needed to be examined, and medical staff simply may have failed to do so.  (Doc. 1 at 5).  To the extent Ward did not follow up to ensure medical staff examined Bester, such conduct was negligent, at most, and insufficient to rise to the level of a constitutional violation.  *See generally Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995).

Additionally, Bester does not allege he notified McGill that he required medical care or that McGill ignored the notice.  (Doc. 1).  Although Bester contends he asked other officers for medical care but was refused (Doc. 1 at 6), he fails to name those individuals as defendants in this case.  Regardless, Bester has not placed verifying medical evidence in the record establishing he suffered any detrimental effect due to the two-day delay in receiving medical treatment.  *See Hill*, 40 F.3d at 1188.  Consequently, the defendants' motion for summary judgment is due to be granted as to Bester's Eighth Amendment medical claim.

## V. RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** the following:

1. the defendants' motion for summary judgment be **DENIED** as to Bester's Eighth Amendment excessive force claim and that claim be referred to the undersigned magistrate judge for further proceedings; and

2. the defendants' motion for summary judgment be **GRANTED** as to Bester's Eighth Amendment medical care claim and that claim be **DISMISSED WITH PREJUDICE**.

## VI. NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to

factual and legal conclusions if necessary in the interests of justice.  11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations.  The district judge must conduct a hearing if required by law.  Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence.  Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record.  The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may only appeal from a final judgment entered by a district judge.

**DONE** this 15th day of June, 2021.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE